UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

ROGER NASSER,

                        Plaintiff,            **AMENDED**[1]
                                              **MEMORANDUM & ORDER**
                   -against-                  19-CV-0845(EK)(ST)

PORT IMPERIAL FERRY CORP.,
individually and d/b/a NY WATERWAY,

                        Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

         Plaintiff Roger Nasser broke his ankle falling down a set of stairs on a ferry in the New York harbor. He brings claims against the ferry operator, defendant Port Imperial Ferry Corp., for negligent failure to maintain and inspect the stairs, and for the negligent design and construction of the ship's stairwell.  Port Imperial moves for summary judgment on all claims.  As explained below, Defendant's motion is granted in part and denied in part.

_____

         [1] This order was amended on January 6, 2022, to clarify certain obligations flowing from 46 U.S.C. § 3315.  The revised order substitutes, on pages 7 and 12, the phrase "licensed individuals" for "shipowners" in two places where the latter reference had initially appeared, and makes minor additional conforming changes. Those amendments do not change the Court's reasoning or alter the substance of the order.

## I.   Background

The incident in question occurred on the *Alexander Hamilton*, a ferry built in 1989 that transports passengers between Governors Island and Whitehall Terminal in lower Manhattan.  *See* 28 U.S.C. § 112(c) ("The Eastern District comprises . . . the waters within the counties of Bronx and New York," "concurrently with the Southern District").  As Plaintiff descended the port-side stairs to disembark, his foot missed the second step, causing him to fall.  Plaintiff testified at deposition that he fell because the second step was "too narrow" and "the distance between the steps" was "not the same ratio." Def's Ex. 1 (O'Connor) at 114:17-22; 116:14, ECF No. 23-5 ("Nasser Dep.").  He also testified that he could not break his fall because the handrail was "kind of high."  *Id*. 113:9-22.

In addition to his own testimony, Plaintiff has adduced evidence that the top two steps were of unequal dimensions, and that the height of the handrail was four inches higher than the U.S. Coast Guard's regulations permit. Plaintiff's expert witness, Dr. James Pugh, examined the stairway in question and attested that "the top riser [i.e., the topmost step] varies considerably in height from 8 inches on the right side (in the direction of descent) to 6 inches on the left side," while the second-highest step "has an 8-inch riser height and 9-inch tread width."  Pl.'s Ex. A (Goldfarb) ¶ 4, ECF No.

2

23-25 ("Pugh Decl."); *see also* Def's Ex. 2 (Colletti) Fig. 3,
ECF No. 23-15 ("Colletti Report") (top riser varied from 7-¾
inches to 5-¾ inches).  Dr. Pugh further attested that
differences of this magnitude between steps increase the risk of
falling because "the brain becomes ergonomically accustomed and
programmed" to expect consistent step dimensions.  Pugh Decl.
¶ 6.

In response, Defendant argues that the Coast Guard
certified the ferry for operation despite these conditions, and
that inspectors have re-certified the ferry every year since
1990 without raising any concerns about the stairwell.
Defendant also attests that no passengers have complained about
defects on these stairs before.  *See* Declaration of Alan Warren
¶ 15, ECF No. 23-11 ("Warren Decl.").

## II.  Analysis

"Where a tort falls within admiralty jurisdiction, the
general maritime law applies, even if the plaintiff's complaint
pleaded diversity of citizenship as the sole basis for subject
matter jurisdiction."  *Friedman v. Cunard Line Ltd.*, 996 F.
Supp. 303, 305 (S.D.N.Y. 1998).  "Where maritime law is silent,
state law supplements the maritime law."  *Guarascio v. Drake
Assocs., Inc.*, 582 F. Supp. 2d 459, 462 n.1 (S.D.N.Y. 2008).

To establish a claim for negligence, plaintiffs must
establish a legal duty, a breach of that duty, causation, and

damages.  *See, e.g.*, *In re Treanor*, 144 F. Supp. 3d 381, 385
(E.D.N.Y. 2015) (maritime case).  Because Defendant does not
dispute the causation or damages elements at this stage, the
only question is whether Defendant breached a duty to passengers
by failing to properly construct and maintain the stairwell.

In their submissions, the parties focus primarily on
whether the stairwell violated Coast Guard regulations.  As
discussed below, this raises a question of whether Defendant was
*per se* negligent.  Because the parties emphasized this issue,
the Court addresses negligence *per se* before turning to common-
law negligence.

A.   Negligence *Per Se*

"[W]hen a defendant has violated a safety regulation
causing an injury, courts will find the defendant *per se*
negligent, the theory being that the legislature or agency has
already determined what precautions need to be taken."  *In re
City of New York*, 522 F.3d 279, 286 (2d Cir. 2008).  "The
failure to follow any Coast Guard regulation which is the cause
of an injury establishes negligence per se."  *Dougherty v. Santa
Fe Marine Inc.*, 698 F.2d 232, 235 (5th Cir. 1983).

The parties dispute whether the vessel violated Coast
Guard regulations.  They agree that Subchapter K of these
regulations applies to the ferry.  *See* 46 C.F.R. § 114.110
(subchapter applies to "each vessel of less than 100 gross tons

4

that carries more than 150 passengers" and that "carries at least one passenger for hire"); Warren Decl. ¶ 9 (the *Alexander Hamilton* weighs ninety-five gross tons and is certified to carry up to 399 passengers).  Covered vessels must comply either with Subchapter K *or* the rules applicable when Subchapter K was enacted.  *See* 46 C.F.R. § 116.115(a) ("[A]n existing vessel must comply with the construction and arrangement regulations that were applicable to the vessel on March 10, 1996, or, as an alternative, the vessel may comply with the regulations in this part.").  Defendant does not dispute that the relevant steps violate Subchapter K.  The question is whether the steps comply with Subchapter T, which the parties agree applied to the vessel prior to Subchapter K's enactment.

Subchapter T, in turn, incorporates Section 72.05 of Subchapter H of the Coast Guard's regulations.  *See id.* § 177.10-5 ("Vessels contracted for on or after July 1, 1961, which carry more than 150 passengers shall meet the requirements of Subpart 72.05 of Subchapter H (Passenger Vessels) of this chapter").  And Plaintiff's expert testified that the steps here violate Subchapter H.  Section 72.05 of Subchapter H provides that: "there shall be no variation in the width of . . . stairs, the depth of the tread, or the height of the risers in any flight" unless necessary, 46 C.F.R. § 72.05(n); "the sum of the riser height and tread depth shall be at least 17 inches and not

5

more than 18 inches," *id.* § 72.05(o); and handrails must be "fitted at a vertical height above the tread at its nosing of between 33 and 36 inches," *id.* § 72.05(k). The record contains evidence that the riser height on the first step varied by two inches, the combined tread-and-riser dimensions on its shallower side was two-inches shy of requirements, and the height of the handrail exceeded the regulatory maximum by four inches. Pugh Decl. ¶¶ 6-8.

Defendant argues, however, that in certifying the vessel for operation in 1990, the Coast Guard impliedly waived the application of these requirements of Subchapters T and H to the *Alexander Hamilton*. Specifically, Defendant argues that Subchapter T authorizes the Officer in Charge, Marine Inspection ("OCMI") to waive application of Section 72.05 on a case-by-case basis.[2] The OCMI must have exercised this discretion here, Defendant argues, because the OCMI certified the vessel for operation after inspecting the vessel and its plans, which would

_____

[2] Defendant points to three provisions in Subchapter T that (it claims) authorize the OCMI to deem Subchapter H inapplicable to specific vessels: (1) 46 C.F.R. § 177.10-5(a), which provides that "the application of [46 C.F.R. § 72.05 of Subchapter H] to specific vessels shall be as determined by the [OCMI]"; (2) 46 C.F.R. § 175.05-1(b), which provides that "vessels carrying more than 150 passengers shall comply with [Subchapter T] and shall be subject to certain requirements as determined by the [OCMI]"; and (3) 46 C.F.R § 175.25-1, which provides that the "[OCMI] may give special consideration to departures from the specific requirements" of 46 C.F.R. § 177 (among other sections) "when special circumstances or arrangements warrant such departures."

have alerted him to the alleged defects in the vessel's stairwell.[3]

Defendant offers no support for the novel contention that a court should "deem" the Coast Guard to have waived a vessel owner's compliance with safety regulations by the OCMI's silence, and this Court has located no such authority. *Cf. Abruska v. Northland Vessel Leasing Co., LLC*, No. A04-0209CV, 2005 WL 1378720, at *2 (D. Alaska June 6, 2005) (issuance of certificate of inspection to non-compliant vessel is not "evidence that the [violated regulation] was therefore inapplicable"). Accordingly, Defendant's motion for summary judgment on the *per se* negligence theory cannot succeed. Instead, to ensure the exemption is deliberate (rather than the result of inspector negligence), I conclude that the OCMI must affirmatively express his or her intent to excuse the vessel from compliance with applicable safety regulations when issuing a certificate of inspection. To hold otherwise would render inert the law requiring licensed individuals, during Coast Guard

---

[3] There is no direct evidence that the OCMI knew about the challenged features when issuing the certificate of inspection here. Section 176.01-10(c) merely provides that, before issuing a certificate, the OCMI must

approve the "construction, arrangement and equipment of all vessels," based on "the information, specifications, drawings, and calculations available to the [OCMI], and on the successful completion of an initial inspection for certification." 46 C.F.R. § 176.01-10(c). This, Defendant claims, proves that the OCMI knew about the challenged features here when issuing the certificate of inspection.

inspections, to "point out defects and imperfections known to the individual in matters subject to regulations and inspection." *See* 46 U.S.C. § 3315. Defendant's motion for summary judgment on the *per se* negligence theory is denied.

  B.  Common-Law Negligence

    As noted above, Defendant's motion for summary judgment is primarily based on the argument that the stairs complied with applicable regulations. But even assuming such compliance (which, as explained above, has not been established), "the absence of [a regulatory] violation" is "hardly dispositive" of Plaintiff's claim. *Janover v. Ryder Sys., Inc.*, 1:05-CV-2841, 2006 WL 2335546, at *2 (E.D.N.Y. Aug. 10, 2006). "To the extent the defendant's papers suggest that application of the standard of ordinary reasonable care requires plaintiffs to prove that defendant's conduct was 'negligent per se,' it misapprehends plaintiff's burden of proof." *See Palmieri v. Celebrity Cruise Lines, Inc.*, No. 98-CV-2037, 1999 WL 494119, at *5 (S.D.N.Y. July 23, 2019) (Pitman, M.J.) (internal citations omitted).

    "It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards" its passengers, regardless of whether the vessel complies with applicable regulations. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). Where (as here) the

8

relevant "hazard [is] not unique to the maritime environment," "the appropriate standard is one of reasonable care under the circumstances." *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988) (citing *Rainey v. Paquet Cruises*, 709 F.2d 169, 171 (2d. Cir. 1983)).  Under this standard, "negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger." *Desiderio v. Celebrity Cruise Lines, Inc.*, No. 97-CV-5185, 1999 WL 440775, at *15 (S.D.N.Y. June 28, 1999).  In addition to showing that an unreasonably dangerous condition exists, "a maritime claimant must [also] show that the shipowner had actual or constructive notice of the dangerous condition." *Treanor*, 144 F. Supp. 3d at 389.  "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 503 (S.D.N.Y. 2008) (internal quotations omitted).

Plaintiff has adduced sufficient evidence to survive summary judgment on his claims for negligent maintenance and inspection.  "While a claim of negligence does not preclude the granting of summary judgment, courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact in

all but the most extreme cases." *Palmieri*, 1999 WL 494119, at *3.  Here, Plaintiff presented expert evidence that the variance in the top step's riser height — two inches, or twenty-five percent of the step's height — was apparent for over thirty years.  *See, e.g.*, Pugh Decl. ¶ 4.  Based on this evidence, a reasonable juror could conclude that Defendant had notice of this condition, and that its failure to make adjustments fell below a reasonable standard of care.  *Cf. Deykina v. Chattin*, No. 12-CV-2678, 2014 WL 46288692, at *7 (E.D.N.Y. Sept. 16, 2014) (denying summary judgment where the "parties' expert reports provide differing assessments of whether the handrail, riser height, and tread depth of the stairs violate accepted engineering practices and constitute defective conditions").

Defendant argues that it satisfied its duty of care because it complied with applicable regulations, given that the OCMI waived the application of Subchapter H.  It has not established that this vessel was exempt from these requirements, however.  And as explained above, "[c]ompliance with a legislative enactment or administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."  Restatement 2d of Torts § 288C (1965); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 91 (2d Cir. 2006) ("The fact that the [program] complied with OSHA regulations . . . does not conclusively demonstrate

that the [defendant] was free from negligence."); *Hargrave v. Blake Drilling & Workover Co. Inc.*, No. 07-985, 2008 WL 393764, at *2 n.8 (E.D. La. Feb. 11, 2008) ("The fact that [the defendant] may have complied with Coast Guard regulations and other applicable laws does not prevent this court from finding that [the defendant] negligently maintained the stairs at issue."); *Contini v. Hyundai Motor Co.*, 865 F. Supp. 122, 123 (S.D.N.Y. 1994) ("[C]ompliance with mandatory minimum regulatory standards" does not automatically "avoid liability for negligent or reckless behavior if proven.").

Defendant also contends that the top step needed to be uneven given the "cambered" design of the deck. *See* Colletti Report at 4 (noting that the "sloping/cambered surface" of the deck "is a necessary design component of the vessel" to permit "water run-off"). This argument cannot carry the day at the summary-judgment stage. Although the structural plans required the surface of the deck to drop four inches from its center to the sides, Def's Ex. 5-1 (Colletti) at 1, ("Construction Plans"), the evidence reflects that roughly half of that decline occurred across the width of the top step alone. A reasonable juror could find that Defendant's failure to mitigate this feature — for instance, by leveling the top step and ramping down around it — was unreasonable.

Defendant next argues that it lacked notice of the dangerous conditions alleged here.  In support, Defendant reasserts its reliance on the Coast Guard inspectors' silence, as well as the absence of prior complaints from passengers.  But as explained above, the inspectors' silence neither exempted the vessel from applicable safety regulations nor excused licensed individuals in the employ of the Defendant from their duty to inform inspectors of any known defects or imperfections.  *See* 46 U.S.C. § 3315(a) (during inspections, licensed individuals must "point out defects and imperfections known to the individual in matters subject to regulations and inspection").  The Coast Guard's silence, therefore, does not establish that Defendant lacked notice of dangerous conditions on the stairwell.  In any event, there is no evidence that Defendant actually relied on these inspections in concluding that the stairwell was safe, or even that Coast Guard inspectors inspected the stairwell treads at issue during their visits.  The relevant statutes do not expressly require them to do so.[4]

---

[4] The regulations governing the initial inspection required the OCMI only to find that "[t]he construction, arrangement and equipment of [the] vessel[]" was "acceptable," "based on the information, specifications, drawings and calculations available to the OCMI, and on the successful completion of an initial inspection for certification."  46 C.F.R § 176.01-10(c).  In performing the initial inspection, the inspector was obligated to "insure that the arrangement, materials and scantlings of the structure . . . and all other equipment compl[ied] with the regulations in this subchapter to the extent they are applicable to the vessel being inspected," "are in accordance with such approved plans as may be required by subpart 177.05 of

*Cf. Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 513-15 (7th Cir. 1995) (dismissing indemnification claim against United States on sovereign-immunity grounds, and noting that the rules governing the Coast Guard "inspection process" neither compel a specific procedure nor require inspection of handrails, leaving inspection of handrails to the discretion of Coast Guard officials). And the ferry's captain testified at deposition that he had never seen Coast Guard inspectors evaluate stairwells during their inspections. Pl.'s Ex. C (Goldfarb) at 171:5-13, ECF No. 23-27 ("Licona Dep.").

The magistrate judge's decision in *Davis v. Spirit of New Jersey*, on which Defendant relies, does not support a different outcome. No. 96-CV-4992, 2000 WL 33302241 (D.N.J. May 5, 2000) (Chesler, M.J.) ("*Davis II*") (denying motion for reconsideration of *Davis v. Spirit of New Jersey*, No. 96-CV-4992, 1999 WL 33263861 (D.N.J. Dec. 17, 1999) ("*Davis I*")). *Davis I* involved a similar argument regarding constructive

---

this subchapter," and that "the materials, workmanship and condition of all parts of the vessel and its machinery and equipment are in all respects satisfactory for the service intended." *Id.* § 176.05-5(c). Defendant was required to submit these "initial plans" to the OCMI prior to the "initial inspection," including the plans for the stairwell and handrails at issue. *Id.* § 176.05-1(a) (requiring Defendant to submit copies of the ship's structural plans to the OCMI).

    With respect to the annual certifications, the regulations state only that inspections must "include . . . the structure, machinery and equipment," including that the "structure" of the vessel "and other equipment" "is in satisfactory condition and fit for the service for which it is intended," and "complies with the regulations in this subchapter to the extent" that they apply. *Id.* § 176.05-10.

notice of conditions on a ferry stairwell, whose tread depths and riser heights varied by roughly one-quarter of an inch at most.  *See Davis I*, at *5.  In concluding that the defendant lacked notice of these issues, the court in *Davis I* (as explained in *Davis II*) reasoned that the defendant had "performed reasonable inspections" and "reasonably relied upon the inspections conducted by the Coast Guard," and that the "defects were not of such a nature that defendants should be charged with notice of them."  *Davis II*, 2000 WL 33302241, at *4; *see also McHale v. Westcott*, 893 F. Supp. 143, 148 (N.D.N.Y. 1995) (plaintiff failed to raise a genuine issue of fact that post office had notice of one-eighth of an inch riser differential in step where government did not create the defect, inspection reports never alluded to the defect, the customer failed to notice it, and hundreds of people used steps for many years without perceiving the defect).

But the alleged variance here is eight times greater than that in *Davis*, and this vessel differed from the structural plans approved by the OCMI (unlike in *Davis*, *see Davis I*, 2000 WL 33302241, at *2).  And as discussed above, reliance on Coast Guard inspections, standing alone, does not negate Defendant's obligation to conduct its own inspections.  For these reasons, Defendant's motion for summary judgment is denied as to Plaintiff's common-law negligence theory.

C.   <u>Negligent Design and Manufacture</u>

Plaintiff argues that Defendant is liable for the defective manufacturing and design of the stairwell.  In admiralty,

> [t]he applicable substantive law of products liability
> . . . is Section 402a of the Restatement (Second) of Torts
> (1965), which requires the plaintiff to prove: (1) that the
> defendant sold or manufactured the product; (2) that the
> product was unreasonably dangerous or was in a defective
> condition when it left the defendant's control; and (3)
> that the defect resulted in injury to the plaintiff.

*Guarascio*, 582 F. Supp. 2d at 463 (S.D.N.Y. 2008); *see also In re Complaint of Am. Export Lines, Inc.*, 620 F. Supp. 490, 517 (S.D.N.Y. 1985) ("Section 402A of the Restatement (Second) of Torts . . . has been generally accepted as the law of strict products liability in admiralty.").

Plaintiff presents no evidence that Defendant sold or manufactured the ferry.  Defendant, by contrast, has submitted a sworn affidavit attesting that non-party Gulf Craft, Inc. constructed the vessel in Patterson, Louisiana.  Warren Decl. ¶ 8.  The 2017 certificate of inspection confirms that the ferry was constructed there, Def's Ex. 7 (Colletti) at 1, ECF No. 23-21 ("2017 Certificate of the Inspection"); and Gulf Craft, Inc.'s name appears on the construction plans, Construction Plans at 1.  Because there is no genuine dispute that a non-party constructed and designed the vessel, Defendant's motion to

15

dismiss Plaintiff's claims for negligent design and manufacture must be granted.  *Cf. Davis II*, 2000 WL 33302241, at *4 (same).[5]

### III. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:     January 6, 2022
           Brooklyn, New York

---

[5] There appears to be some disagreement as to whether the Second or Third Restatement of Torts should apply to maritime cases. *See, e.g.*, *Morgan v. Almars Outboards, Inc.*, 316 F. Supp. 3d 828, 834 n.2 (D. Del. 2018) ("[F]ederal appellate courts have yet to adopt the Third Restatement as the standard for maritime law.").  To the extent the THIRD RESTATEMENT OF TORTS: PRODUCTS LIABILITY applies, Plaintiff's claim fails because he has adduced no evidence that Defendant is "engaged in the business of selling or distributing the type of product that harmed plaintiff" (i.e., boats). *See Smith v. Mitlof*, 99-CV-1083, 198 F. Supp. 2d 492, 503 (S.D.N.Y. 2002) (dismissing products-liability claim in maritime case for this reason).